IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | | |
|---|---|---|
| CRYSTAL JENNINGS, | ) | |
|     Plaintiff, | ) | Civil Action No. 4:15-cv-60 |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | By:    Joel C. Hoppe |
|     Defendant. | ) | United States Magistrate Judge |

Plaintiff Crystal Jennings asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–434, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 14. Having considered the administrative record, the parties' briefs and oral arguments, and the applicable law, I find that the Commissioner's decision is not supported by substantial evidence. Therefore, I recommend that the Court **DENY** the Commissioner's Motion for Summary Judgment, ECF No. 18, and **REMAND** the case for further administrative proceedings.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and will be substituted for Carolyn W. Colvin as the Defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1

asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether an applicant is disabled. The ALJ asks, in sequence, whether the applicant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional

capacity; and, if not (5) whether he or she can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The applicant bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the applicant is not disabled. *See id.*

## II. Procedural History

Jennings applied for DIB and SSI on September 9, 2011, alleging disability caused by hernia repair, asthma, chronic obstructive pulmonary disease ("COPD"), and arthritis in the right knee. Administrative Record ("R.") 60, 70, ECF No. 11. She alleged onset of her disability on September 14, 2010, at which time she was thirty-nine years old. *Id.* Disability Determination Services ("DDS"), the state agency, denied her claims at the initial, R. 60–79, and reconsideration stages, R. 96–119. On May 15, 2014, Jennings appeared with counsel at an administrative hearing before ALJ Brian P. Kilbane, at which time the ALJ heard testimony from Jennings and Barristade Hensley, Ed.D., a vocational expert ("VE"). R. 24–54.

ALJ Kilbane denied Jennings's claims in a written decision issued on June 9, 2014. R. 11–23. He found that Jennings had severe impairments of COPD, left leg arthropathy, obesity, and status post adhesion and hernia repairs. R. 13. Jennings's medically determinable impairments of gastroesophageal reflux disease, mild hyperopic astigmatism, deep vein thrombosis ("DVT"), hyperlipidemia, migraine headaches, and affective disorder were found to be nonsevere, and an alleged impairment of low back pain was not supported by the record. R. 13–15. The ALJ next determined that none of Jennings's impairments, alone or combination, met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1—in particular Listings 1.00 (disorders of the musculoskeletal system), 3.02 (chronic pulmonary insufficiency), and 5.06 (inflammatory bowel disease). R. 15–16.

3

As to Jennings's residual functional capacity ("RFC"),[2] the ALJ found that she could perform light work[3] with no climbing of ladders, ropes, or scaffolds; occasional kneeling, crouching, crawling, and climbing of ramps or stairs; frequent stooping; and avoidance of concentrated exposure to environmental hazards. R. 16–21. Based on this RFC and the VE's testimony, the ALJ found that Jennings could perform her past relevant work as a customer service representative and cashier, or alternatively, could perform other work existing in significant numbers in the national and regional economies, including non-postal mail clerk, order clerk, and hand packer. R. 21–23. He therefore concluded that Jennings was not disabled. R. 23.

Jennings sought review of the ALJ's opinion by the Appeals Council. R. 6–7. She submitted additional evidence for consideration, which the Appeal Council entered into the record. R. 4. On October 22, 2015, the Appeals Council denied Jennings's request for review without explanation. R. 1–3. This appeal followed.

III. Facts

Jennings has a long history of gastrointestinal ("GI") issues dating back to 2000, when a television fell onto her chest, rupturing gastric contents into her mediastinum and abdomen. R. 684.[4] She underwent acute repair of a perforation to her upper GI tract at that time and had

---

[2] A claimant's RFC is the most he or she can do on a regular and continuing basis despite his or her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

[3] "Light" work involves lifting no more than twenty pounds at a time, but frequently lifting objects weighing ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these lifting requirements can perform light work only if she also can "do a good deal of walking or standing, or do some pushing and pulling of arm or leg controls while sitting." *Hays v. Sullivan*, 907 F.2d 1453, 1455 n.1 (4th Cir. 1999).

[4] The earliest treatment notes in the record are from September 29, 2010. R. 289. Any description of Jennings's medical history prior to this date is gathered from subsequent accounts, rather than from contemporaneous documents.

subsequent, similar repairs in 2001 and 2003. R. 304, 684. Around the time of her alleged onset date, she was hospitalized at Martinsville Regional Medical Center following an episode in which she experienced difficult defecation, sharp pain in the epigastrium, diffuse pain in the lower abdominal quadrants, shortness of breath, and vomiting blood. *Id.* A CT scan of her abdomen showed free peritoneal air, and an exploratory laparotomy found multiple adhesions, a viable incarcerated incisional hernia, and peritonitis of unknown etiology, but a site of perforation could not be identified. *Id.* Her hernia was excised, and her abdomen was flushed and closed. R. 684. She made slow progress over the next two weeks, experiencing a constant low-grade fever and moderate leukocytosis, which did not improve with antibiotic treatment. R. 684–85. Another CT scan revealed free fluid in the right upper quadrant of the abdomen and in the pelvis. R. 685.

On September 29, Jennings was transferred to Carilion Roanoke Memorial Hospital (the "hospital") for treatment of her postoperative complications and abdominal abscesses. *Id.* Her abscesses were drained, with fecal matter present in the output of one drain, and a repeat CT scan suggested perforation of the sigmoid colon. *Id.* On October 3, Bruce A. Long, M.D., performed a sigmoid and left colon resection with distal transverse colostomy. *Id.*[5] Jennings remained hospitalized for about two weeks with some complications, including DVT in the bilateral lower extremities and slow progress with physical therapy. R. 685–86. She was discharged on October 19, at which time she tolerated a regular diet, had regular bowel movements, ambulated with a walker, and was in stable condition with her pain well-controlled. R. 686. Following her discharge, she received home nursing care for her colostomy site and her surgical wound. R. 757. She continued with home care until October 31, at times struggling because of a limited ability to

---

[5] Dr. Long also performed a right oophorectomy at the same time after incidental discovery of an ovarian mass. *Id.*

ambulate, weakness, and pain around her surgical site, but at the time of her discharge she was able to perform activities of daily living with assistance. *See generally* R. 783–832.

The record is then silent until March 15, 2011, at which time Jennings returned to Dr. Long for a follow-up visit. R. 707–10. She showed gradual improvement, but complained of some nausea and loss of appetite. R. 707. There was no evidence of bowel obstruction or persistent sepsis, and a CT scan showed that the abscess in her upper abdomen had resolved. R. 677, 709. On April 11, Jennings visited David H. Lewis, M.D., her primary care physician, with complaints of difficulty sleeping and increased nervousness. R. 1055. Dr. Lewis noted that her colostomy was functioning and that she was tender around her incision site. *Id.* He prescribed Ambien for her insomnia and continued her previously prescribed medications for wound pain, depression with anxiety, and COPD. R. 1055–56.

Jennings returned to the hospital on May 2, at which time Dr. Long reversed her colostomy and performed a ventral hernia repair. R. 680. Her colostomy site was closed at her bedside on May 6. *Id.* Jennings remained in the hospital until May 8, at which time she tolerated a regular diet, ambulated independently, and had regular bowel movements. *Id.*[6] She was discharged to home health care and received home nursing visits several days per week until June 17. *See generally* R. 833–85. On July 25, Dr. Long noted that Jennings still had a persistent seroma and abscess cavity and recently one of her drainage catheters had fallen out prematurely. R. 725–28. On August 4, Dr. Long performed incision and drainage of the abdominal abscess, during which he discovered that pieces of gauze had been left in Jennings's wound. R. 650. She

---

[6] The record includes another surgical note from Dr. Long dated May 10, only two days following her hospital discharge. R. 564–65. The report appears as though it may have been misdated, as it describes a procedure (extensive enterolysis, ventral hernia repair with component separation and reconstruction, and colectomy with coloproctostomy) substantially similar to the operation Jennings underwent on May 2. *Id.* Moreover, this note is included within the records of Jennings's May 2–8 hospitalization, and there is no other record of her being hospitalized on May 10 or immediately thereafter.

was discharged from the hospital that same day, R. 652, and she received home nursing care from August 5 through October 31, *see generally* R. 886–1009.

On November 15, Dr. Lewis noted that Jennings was doing pretty well, with her wound nearly healed, good bowel movement, and no abdominal pains. R. 1062. Jennings had her final visit with Dr. Long on December 20, during which she complained of occasional fecal incontinence, and Dr. Long observed that her wound was healing nicely. R. 1070. Jennings thereafter visited Dr. Lewis sporadically for treatment of miscellaneous ailments, including COPD, depression, low back pain, migraine headaches, diarrhea, fecal incontinence, nausea, and vomiting. *See* R. 1078–80 (June 26, 2012), 1090–91 (Aug. 21, 2012), 1174–76 (Sept. 25, 2012), 1171–72 (Dec. 31, 2012), 1169–70 (Mar. 26, 2013), 1165–67 (July 18, 2013), 1161–64 (Oct. 17, 2013), 1159–60 (Dec. 12, 2013), 1156–58 (Jan. 20, 2014), 1180–82 (May 1, 2014).

IV. Discussion

On appeal, Jennings challenges the Appeals Council's failure to remand for consideration of evidence she submitted following the ALJ's denial of her claims. Pl. Br. 18–21, ECF No. 17. She also contends that the ALJ erred by failing to consider whether she was disabled for a closed period of at least twelve months, *id.* at 15–17; not addressing her extended history of GI impairments, *id.* at 17–18; finding that her subjective descriptions of her symptoms were inconsistent with the record, *id.* at 21–29, including finding that her medically determinable mental impairment of affective disorder was nonsevere, *id.* at 23–25; and not evaluating whether she met the criteria for a number of listed impairments, *id.* at 29–30.

A. *Newly Submitted Evidence*

7

As part of her request for review by the Appeals Council, Jennings submitted a medical opinion[7] completed by Dr. Lewis on May 12, 2014. R. 1183–86. In his opinion, Dr. Lewis stated that he had treated Jennings for four years and five months and that she suffered chronic pain in her low back and abdomen. R. 1183. Jennings's pain would markedly interfere with her concentration and work performance on a continuous basis, and she would need to take unscheduled breaks four to five times per day. R. 1183–84. Her pain would also interfere with her ability to feel, push, and pull. R. 1185. She could walk for only one city block without rest or severe pain; sit for only fifteen minutes at a time and for only two hours throughout an eight-hour workday; and stand or walk for fifteen minutes at a time and for two hours throughout an eight-hour workday. R. 1184. She experienced drowsiness and fatigue as side effects of her medications, and her impairments were likely to produce three or more "bad days" per month. R. 1185–86. Additionally, Jennings had "'short bowel syndrome' from complicated abdominal surgery," meaning that she had "essentially no bowel control," which led to her depression. R. 1186.

When a claimant appeals an ALJ's ruling, the Appeals Council first makes a procedural decision whether to grant or deny review. *Davis v. Barnhart*, 392 F. Supp. 2d 747, 750 (W.D. Va. 2005). This decision processs requires the Appeals Council to consider any additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). "Evidence is 'new' if it is not duplicative or cumulative, and is material 'if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Davis*, 392 F. Supp. 2d at 750 (quoting *Wilkins v. Sec'y, Dep't of*

---

[7] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

8

*Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). Evidence of medical impairments and related symptoms that the ALJ discussed in his opinion necessarily relates to the period on or before the date of the ALJ's decision. *See Wilson v. Colvin*, No. 7:13cv113, 2014 WL 2040108, at *4 (W.D. Va. May 16, 2014). The Appeals Council will grant review if it finds that "the action, findings or conclusions of the [ALJ] are not supported by substantial evidence," 20 C.F.R. §§ 404.970(a)(3), 416.1470(a)(3), including any additional evidence that it was required to consider.

Here, the Appeals Council incorporated Dr. Lewis's opinion into the record, R. 4, and it noted in its denial of Jennings's request for review that it "considered" this evidence, but found, without explanation, "that the additional evidence does not provide a basis for changing the [ALJ's] decision," R. 2. Under such circumstances, this Court must review the entire record, including the additional evidence, to determine whether substantial evidence supports the ALJ's underlying factual findings. *Meyer*, 662 F.3d at 704; *Riley v. Apfel*, 88 F. Supp. 2d 572, 577 (W.D. Va. 2000). This can be a difficult task where, as here, the Appeals Council did not explain why the additional evidence did not render the ALJ's "action, findings, or conclusion . . . contrary to the weight of evidence" now in the record, R. 2. *See Riley*, 88 F. Supp. 2d at 579–80.

The Appeals Council is not required to explain how it considered additional evidence or justify its decision to deny the applicant's request for review. *Meyer*, 662 F.3d at 702, 705–06. A federal court reviewing the Commissioner's final decision, however, is not permitted to make factual findings or attempt to reconcile new evidence with conflicting and supporting evidence in the record. *See id.* at 707. Courts instead maintain the appropriate balance by reviewing the entire record to determine if there is a "reasonable possibility" that the additional evidence would change the Commissioner's final decision that the applicant is not disabled. *See, e.g., Brown v.*

9

*Comm'r of Soc. Sec.*, 969 F. Supp. 2d 433, 441 (W.D. Va. 2013). Reversal and remand is required where "the new evidence 'is contradictory, presents material competing testimony, or calls into doubt any decision grounded in the prior medical reports.'" *Sherman v. Colvin*, No. 4:13cv20, 2014 WL 3344899, at *10 (W.D. Va. July 8, 2014) (quoting *Dunn v. Colvin*, 973 F. Supp. 2d 630, 642 (W.D. Va. 2013)). The same is appropriate where new evidence undermines the ALJ's factual findings and rationale or fills an "evidentiary gap [that] played a role in [the ALJ's] decision" to deny benefits. *Meyer*, 662 F.3d at 707; *cf. Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (ordering remand where evidence submitted to, but not considered by, the Appeals Council "contradict[ed] both the ALJ's findings and underlying reasoning" for denying Jackson's claim and "reinforced the credibility of Jackson's testimony").

Dr. Lewis's opinion meets this standard. It identifies a variety of functional limitations, including bowel incontinence, difficulty concentrating, and reduced ability to sit, stand, and walk, that were not included in the ALJ's RFC finding. Likewise, the opinion notes that Jennings experienced side effects from her medications, which the ALJ did not address. Most importantly, as the only medical opinion submitted by a treating physician, Dr. Lewis's opinion fills an evidentiary gap that was expressly identified in the ALJ's opinion. *See* R. 21 ("[T]he record does not contain any opinions from treating or examining physicians or psychologists indicating that the claimant is disabled or even has limitations greater than those determined in this decision.").

The Commissioner contends that remand for consideration of Dr. Lewis's opinion is unnecessary because the opinion is largely inconsistent with the record, including Dr. Lewis's own limited treatment notes. Def. Br. 12–15, ECF No. 19. It is not this Court's place to make such a determination, however, particularly in the absence of any discussion by the Appeals Council as to how they regarded the opinion. Rather, this matter should be remanded so that the

10

ALJ, who is the proper arbiter of this type of factual question, may evaluate the opinion and determine whether it is entitled to any weight.

B.      *Closed Period of Disability*

Some of Jennings's other challenges to the ALJ's decision warrant further discussion in order to provide the ALJ additional direction on remand. Jennings argues that the ALJ should have specifically considered whether she was entitled to benefits for a closed period of disability. To qualify for disability benefits, a claimant need not show that he or she is permanently or even currently disabled at the time of the hearing. *See Miller v. Comm'r of Soc. Sec.*, No. 13 Civ. 6233, 2015 WL 337488, at \*24 (S.D.N.Y. Jan. 26, 2015). The ALJ must evaluate whether a claimant has shown that he or she was disabled for any consecutive twelve-month period between his or her onset date and the date of the hearing. *See id.* "[T]he disability inquiry must be made throughout the continuum that begins with the claimed onset date and ends with the hearing date, much as though the ALJ were evaluating a motion picture at every frame of that time period instead of . . . a snapshot taken [at] the hearing." *Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075 (N.D. Ill. 2013). Failure to consider whether a closed period of disability exists may warrant remand. *See, e.g.*, *Reynoso v. Astrue*, No. CV 10-04604, 2011 WL 2554210, at \*5–7 (C.D. Cal. June 27, 2011) (remanding for the ALJ's failure to consider whether claimant had a closed period of disability prior to undergoing surgery); *Dounley v. Comm'r of Soc. Sec. Admin.*, No. 3:08cv1388, 2009 WL 2208021, at \*8–9 (N.D. Tex. July 22, 2009) (remanding with instructions to consider claimant's entitlement to a closed period where the ALJ relied primarily on medical evidence generated after the surgery that permitted the claimant to return to work).

Here, the record shows that over the course of about thirteen months (September 2010 through October 2011), Jennings spent a significant amount of time hospitalized or receiving

11

home nursing care. During this period, she underwent three abdominal surgeries and experienced numerous complications in her recovery. She had a colostomy in place from October 2010 through May 2011, and she had an open abdominal surgical wound for an even longer period. She also used a walker during at least some of this period, including after her discharge from the hospital following her initial surgery in October 2010. These factors clearly raise the question of whether Jennings was disabled for at least a twelve-month period as a result of her continual surgical treatment. The ALJ's opinion, however, does not make clear whether this was considered. For instance, although he thoroughly documented Jennings's course of surgeries, *see* R. 18–19, he did not discuss Jennings's home health care, which continued for at least a few weeks after each of her operations. Furthermore, the opinion does not state whether the RFC finding–that Jennings could perform light work–relates to Jennings's functioning during this period or after her abdominal issues had resolved, even though it is likely that her level of functioning would have been markedly different at these times. On remand, therefore, the ALJ should discuss whether Jennings met the criteria for a closed period of disability.

C. *Severe Mental Impairment*

Jennings also alleges that the ALJ erred by finding that her medically determinable mental impairment of affective disorder was nonsevere. The regulations state that an "impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). With regard to a claimant's mental functioning, "basic" work activities are things such as following simple instructions, responding appropriately to other people, and coping with changes in a routine work setting. *Id.* §§ 404.1521(b), 416.921(b). An impairment should be labeled "not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be

12

expected to interfere" with a claimant's work activities. *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)); *accord Waller v. Colvin*, No. 6:12cv63, 2014 WL 1208048, at *7 (W.D. Va. Mar. 24, 2014). This is not a difficult hurdle for the applicant to clear. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999); *Carr v. Comm'r of Soc. Sec.*, No. 4:10cv25, 2011 WL 1791647, at *9 (W.D. Va. May 11, 2011). Still, this Court must affirm the ALJ's severity finding if he applied the correct legal standard and if his conclusion is supported by substantial evidence in the record. *See Meyer*, 662 F.3d at 704.

ALJs use "a special technique" to evaluate the severity of an alleged mental impairment. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the ALJ evaluates the applicant's symptoms and medical records to determine whether she has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b), 416.920a(b). If she does, the ALJ then rates the applicant's resulting "degree of functional limitation" in four areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[8] *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see also id.* pt. 404, subpt. P, app. 1 § 12.00(C). Nonsevere mental impairments cause no more than mild limitations in the first three areas and no episodes of decompensation. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). As always, the ALJ must analyze all of the relevant evidence, articulate his rationale for crediting certain evidence, make required factual findings, and adequately explain the grounds for his conclusions at this stage. *See Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000).

---

[8] Limitations in the first three areas are measured on a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Limitation in the fourth area is measured by the number of episodes of decompensation a person has experienced on a four-point scale: none, one or two, three, or four or more. *Id.*

13

Here, the ALJ determined at step two that Jennings's affective disorder was nonsevere by finding that she had no limitation in the areas of activities of daily living, social functioning, and concentration, persistence, or pace and that she had experienced no episodes of decompensation. R. 14–15. As support for these findings, the ALJ cited to the function report Jennings submitted as part of her application for benefits. *See id.* (citing R. 246–53). The information cited from her report, however, suggests at least some degree of limitation. For example, Jennings stated that she could not do any house or yard work, R. 248, did not spend time with others, R. 250, and followed spoken instructions "not that well," R. 251. Moreover, the ALJ did not discuss any of the medical record pertaining to Jennings's mental health treatment. This is troubling, as the ALJ's step-two finding should "represent reasoned consideration of *all of the pertinent evidence.*" *Claiborne v. Comm'r*, No. SAG-14-1918, 2015 WL 2062184, at *4 (D. Md. May 1, 2015) (emphasis added). Thus, on remand the ALJ should explain any discrepancies between his finding and Jennings's function report and address the medical evidence in determining whether Jennings had a severe mental impairment.

## V. Conclusion

For the foregoing reasons, I find that substantial evidence does not support the Commissioner's final decision. Accordingly, I respectfully recommend that the Commissioner's Motion for Summary Judgment, ECF No. 18, be **DENIED**, and this case be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings and **DISMISSED** from the docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such

proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: March 3, 2017

Joel C. Hoppe
United States Magistrate Judge